UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELLE F.,[1] | Case No.:  18cv1972-AJB (MSB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW OF THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [ECF NO. 19]** |
| ANDREW SAUL, Commissioner of Social Security,[2] | |
| Defendant. | |

This Report and Recommendation is submitted to the Honorable Anthony J.
Battaglia, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local
Rule 72.1(c) of the United States District Court for the Southern District of California.  On
August 24, 2018, Plaintiff Adelle F. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C.
§ 405(g) seeking judicial review of a decision by the Commissioner of Social Security

/ / /

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C.
§ 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] The Court hereby substitutes Andrew Saul, Commissioner of Social Security, for Nancy A. Berryhill,
the former Acting Commissioner of Social Security, as Defendant in this suit.  See Fed. R. Civ. P. 25(d);
42 U.S.C. § 405(g).

("the Commissioner") denying her application for child's insurance benefits.[3]  (ECF No. 1.)

Now pending before the Court is the parties' Joint Motion for Judicial Review of the Final Decision of the Commissioner of Social Security.  (ECF No. 19.)  For the reasons set forth below, the Court **RECOMMENDS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL BACKGROUND

On December 19, 2012, Plaintiff filed an application for child's insurance benefits with the United States Social Security Administration ("the Administration").  (Certified Admin. R. 128, ECF No. 12 ("AR").)  Plaintiff alleged disability based on autism beginning at birth, on June 20, 1950.  (AR 131.)  The Commissioner denied the application initially, (AR 31-34), and upon reconsideration, (AR 38-42).  Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (AR 44.)  The hearing was held on July 29, 2015.  (AR 232, 234.)  Plaintiff's counsel appeared at the hearing, without Plaintiff.  (AR 234.)  A vocational expert appeared, but the ALJ did not call her to testify. (AR 39-40.)

///

///

---

[3] Title II of the Social Security Act provides benefits to an adult child of an individual who is entitled to old-age or disability insurance benefits, or of an individual who dies fully or currently insured.  See 42 U.S.C. § 402(d)(1).  "[A] claimant who has applied for child's benefits under [T]itle II must show that [h]e or she met the statutory definition of disability before he or she attained age 22, and [h]e or she currently meets the statutory definition of disability."  Soc. Sec. Ruling ("SSR") 18-01p, 2018 WL 4945639, *5 (Oct. 2, 2018); 20 C.F.R. § 404.350.  The parties have described the benefit in different terms.  In their Joint Motion, Plaintiff uses the term "child disability benefits," (ECF No. 19 at 3), while the Commissioner uses "child insurance benefits (CIB)," (id. at 8).  The Ninth Circuit has used the terms "child's insurance benefits," see Delzer v. Berryhill, 886 F.3d 1282, 1284 (9th Cir. 2018), and "adult child disability benefits," see Moon v. Colvin, 542 F. App'x 646, 646 (9th Cir. 2013).  For consistency's sake, the terms "child's insurance benefits" or "benefits" are used herein.

18cv1972-AJB (MSB)

On October 8, 2015, ALJ Jay E. Levine issued a written decision finding that Plaintiff had not been disabled, as defined in the Social Security Act, 42 U.S.C. § 423(d)(1)(A), prior to age 22. (AR 23-26 (citing 20 C.F.R. §§ 404.102, 404.350).)

On December 10, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 192-93.)

On February 16, 2017, the Appeals Council denied Plaintiff's request for review, (AR 6-9), resulting in the ALJ decision becoming the final decision of the Commissioner, (42 U.S.C. § 405(h)), but subject to judicial review, (42 U.S.C. § 405(g)). By letter dated July 25, 2018, the Appeals Council granted Plaintiff's request to continue the deadline to file a civil lawsuit and gave Plaintiff 30 days from the date Plaintiff received the letter to file a civil action. (AR 3-4.) Plaintiff filed her Complaint on August 24, 2018. (ECF No. 1.)

## II. EVIDENCE BEFORE THE ALJ

This case is striking for the dearth of evidence in the record at the time this case was decided by the ALJ. The 240-page Administrative Record consists primarily of correspondence and notifications between Plaintiff's representatives and the Social Security Administration, disability reports made by third parties, administrative review documents, and the hearing transcript. (See AR.)

During the hearing, it appears that the sole direct medical evidence in the record was the November 5, 2013 Adult Psychiatric Evaluation of Plaintiff prepared by court-appointed consultative examiner, Camellia P. Clark, M.D., Board Certified Psychiatrist. (AR 202-04.) Dr. Clark noted that Plaintiff was accompanied by women from the Public Guardian's office during the examination, including Deputy Public Guardian, Tiffany Tsai. (AR 202.) Plaintiff herself was able to give almost no history due to her cognitive deficits, and little more was known to the Public Guardian's office. (AR 202.) Even with limited information, Dr. Clark noted that Plaintiff presented "with a decades-long history of autism and schizophrenia." (AR 202.) Dr. Clark noted Plaintiff had bizarre posture, gait and mannerisms in that she curled up as if expecting to be hit, ground her teeth, rocked back and forth and hit herself on the head, and loudly repeated things over and

18cv1972-AJB (MSB)

over.  (AR 203.)  Dr. Clark noted that Plaintiff's social interactions were grossly abnormal, she spoke with a scanning rhythm, and repeatedly asked completely inappropriate questions.  (AR 203.)  Plaintiff was unable to complete serial threes, did not understand the concept of distraction, could not spell her name backward, and was constantly distracted.  (AR 203.)  Plaintiff was also agitated, unable to describe her mood, and her thought processes were perseverative and impoverished.  (AR 203.)  Dr. Clark diagnosed Plaintiff with autism and schizophrenia, and indicated "rule out" mental retardation, with a GAF score of 37.  (AR 204.)  Based on her evaluation, Dr. Clark noted numerous ways that Plaintiff's condition would impair her functioning.  (AR 204.)

Other evidence before the ALJ included documents evidencing that Plaintiff was under conservatorship, (AR 118-19), had been appointed a Guardian Ad Litem shortly before her application for benefits was filed, (AR 127), and that she was a beneficiary of her father's trust, (AR 103-117).

There were no records from any of Plaintiff's treating physicians from any time period.  (See AR (no records from treating physicians submitted prior to hearing).)  Plaintiff did not appear at the hearing, and when counsel offered to arrange her appearance if the ALJ wished to see how impaired Plaintiff was, the ALJ responded, "[n]o. . . . I can read the records and see that she's clearly impaired at this point."  (AR 237.)

### III. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's sequential evaluation process.  (AR 23-25); see also 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had never engaged in substantial gainful activity.  (AR 25.)  At step two, where the ALJ was to determine whether Plaintiff had "a medically determinable impairment that [was] 'severe,'" (AR 24), the ALJ simply found that "[p]rior to the date the claimant attained age 22, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment," (AR 25).

/ / /

The ALJ stated in relevant part:

> The claimant has been diagnosed with autism and schizophrenia. Unfortunately, there is no medical evidence indicating when the claimant was first affected by either impairment, and/or to what degree she was affected. . . . Without some documentation to support the allegations of disability from a date prior to the claimant's 22nd birthday, her claim must be denied. . . . Accordingly, I find that for the period prior to the claimant's 22nd birthday, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.

(AR 26 (internal citation to the record omitted).) Based solely on the lack of "medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" "for the period prior to the claimant's 22nd birthday," the ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act "at any time prior to June 19, 1972, the date she attained age 22." (AR 26.)

## IV.  DISPUTED ISSUES

As reflected in the parties' Joint Motion for Judicial Review of the Final Decision of the Commissioner, Plaintiff raises the following issues as the grounds for reversal and remand:

1.  Whether the ALJ properly concluded Plaintiff's impairments were not medically determinable prior to age 22, without developing the record to obtain the opinion of a medical expert in order to determine the onset date of Plaintiff's subsequently-established disability, (ECF No. 19 at 3); and

2.  Whether the evidence submitted to the Appeals Council constitutes new and material evidence which the Council was required to consider, (id.).

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Sec'y of Health &

Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

## V. DISCUSSION

### A. The ALJ Erred by Concluding that Plaintiff's Impairments Were Not Medically Determinable Prior to Age 22 without Adequately Developing the Record.

To qualify to receive child's insurance benefits under Title II, onset of the disability must be established prior to the claimant turning 22 years old. 42 U.S.C. § 402(d); see also Smolen v. Chater, 80 F.3d 1273, 1279–80 (9th Cir. 1996) ("[T]he claimant must be disabled continuously and without interruption beginning before her twenty-second birthday until the time she applied for child's disability benefits.") (emphasis in original). Two requirements must be met to establish disability. See 42 U.S.C. § 423(d). First, the claimant is required to demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Next, the impairment must be severe enough that the claimant can perform neither her prior work, nor any other gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). It is the claimant's "ultimate burden to prove disability before the expiration of disability insured status." Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).

Plaintiff's application for child's insurance benefits was filed in 2012, when Plaintiff was 62 years old, under conservatorship and represented by a Guardian Ad Litem. (AR 12; see also 118-19 (appointing conservator for Plaintiff on May 17, 2007)),

18cv1972-AJB (MSB)

127 (appointing Guardian Ad Litem in conservatorship matter on October 1, 2012).) Plaintiff's application for Title XVI benefits was evidently approved in 2013, and her application for child's insurance benefits hinged on whether she could demonstrate that her disability began before June 23, 1972, Plaintiff's 22nd birthday.  (AR 234.)  The issue with her application for Title II benefits has always been whether there is sufficient evidence that she suffered from her disability before the age of 22.  (See AR 229-30 (case analysis finding insufficient evidence to award benefits under Title II where there were no records from June 1968 to June 1973), 237-39 (ALJ and Plaintiff's attorney discussing the difficulty obtaining records regarding Plaintiff from the late 1960s and early 1970s to establish the date of onset of her disability).

**1.  The ALJ determined Plaintiff was disabled and was required to determine onset date, which was ambiguous under the circumstances.**

Plaintiff asserts that the Administration's decision to deny benefits should be reversed and remanded because after the ALJ determined that Plaintiff was disabled due to autism and schizophrenia, he failed to meet his obligation to develop the record and call a medical advisor to obtain a legitimate medical basis for determination of onset date.  (ECF No. 19 at 3.)

When the ALJ issued his decision, Social Security Ruling ("SSR")[4] 83-20 required[5] ALJs to "call on the services of a medical advisor when onset [of a disability] must be inferred."  SSR 83-20, 1983 WL 31249, *1 (Aug. 20, 1983).  The ruling stated:

---

[4] Social Security Rulings "are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).  "These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] have adopted."  Id.

[5] In 2018, SSR 83-20 was rescinded and replaced by SSR 18-01p on October 2, 2018.  2018 WL 4945639, *2 (Oct. 2, 2018). With respect to applicability, the new ruling states:

We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.  If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this

18cv1972-AJB (MSB)

In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may . . . even be determinative of whether the individual is entitled to or eligible for any benefits. . . . Consequently, it is essential that the onset date be correctly established and supported by the evidence . . . .

. . .

Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

. . .

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development review may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

. . .

How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a

---

SSR, we will apply this SSR to the entire period at issue in appropriate cases when we make a decision after the court's remand.

2018 WL 4945639 at *7. Here, the Commissioner's decision became final on October 8, 2015. (See ECF No. 19 at 23 n.3); Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council declines review, 'the ALJ's decision becomes the final decision of the Commissioner.'") (citation omitted). SSR 83-20 was therefore in effect at the time of the final decision. The Commissioner concedes that SSR 83-20 is applicable now because it was applicable at the time of the hearing. (ECF No. 19 at 6 n.2 ("Plaintiff relies upon the Ruling in effect at the time of the hearing decision, as it was then binding.").) Accordingly, and in line with other district courts considering the issue, the Court applies SSR 83-20. See, e.g., Washington v. Saul, No. CV 1:17-3365-CMC-SVH, 2019 WL 3208755, at *10 n.1 (D.S.C. July 10, 2019), Erin R. v. Comm'r of Soc. Sec., No. C18-5869-TSZ-BAT, 2019 WL 3021420, at *2 n.3 (W.D. Wash. June 4, 2019); Ochoa v. Berryhill, No. CV 18-287 SCY, 2019 WL 1596368, at *7 n.7 (D.N.M. Apr. 15, 2019).

18cv1972-AJB (MSB)

<u>medical advisor when onset must be inferred.</u>  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in the file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation.  <u>Information may be obtained from family members, friends, and former employers to . . . . furnish additional evidence regarding the course of the individual's condition</u>[.]

<u>Id.</u> at *1-3 (emphasis added).

The Ninth Circuit has repeatedly held that SSR 83-20's requirement that ALJs "should" call on a medical advisor when onset must be inferred is mandatory.  In <u>DeLorme</u>, the court stated when "the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination."  924 F.2d at 848; <u>see also</u> <u>Armstrong</u>, 160 F.3d at 590 ("In <u>DeLorme</u>, we held that . . . 'should' means 'must.'"); <u>Morgan v. Sullivan</u>, 945 F.2d 1079, 1082-83 (9th Cir. 1991) ("The Rule [in SSR 83-20] suggests that when the evidence regarding date of onset of mental impairment is ambiguous . . . the ALJ should determine the date based on an informed inference. . . . Such an inference is not possible without the assistance of a medical expert.") (internal citation omitted); <u>Moon v. Colvin</u>, 542 F. App'x 646, 647 (9th Cir. 2013) ("When the onset of disability must be inferred because a definite onset date cannot be determined from the medical evidence in the record, the ALJ must obtain expert testimony.") (citations omitted).  An exception to the requirement to call on a medical advisor applies, however, if the ALJ "<u>explicitly</u> finds that the claimant has <u>never</u> been disabled[.]"  <u>Sam v. Astrue</u>, 550 F.3d 808, 809 (9th Cir. 2008) (per curium) (emphasis added).

SSR 83-20 requires that the ALJ in social security cases develop the record, even where the claimant is represented by counsel.  <u>DeLorme</u>, 924 F.2d at 848.  In <u>DeLorme</u>, the court explained that "[b]ecause mentally ill persons may not be capable of

protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment." Id. at 848-49 (quoting SSR 83-20). "Contact with the individual's family, former employers, and other associates may lead to information about previous hospitalizations, medical treatment, or manifestations of symptoms." SSR 83-20 at *5.

Here, the ALJ found that Plaintiff is currently disabled. During the hearing, the ALJ stated:

> This is a case which I take is – take it the central issue is when was the onset date, because the claimant has always been – or should I say has been autistic for some time, and she was awarded Title XVI benefits in the last several years, or in . . . 2013 . . . . So, and they found that the claimant met Listing 12.03[6] as of the . . . application date, yeah, on the SSI claim.

(AR 234.) In his written decision, the ALJ noted that Dr. Clark found Plaintiff's autism and schizophrenia "were of listing level severity." (Id. at 26.) This is consistent with the severe cognitive impairments and other symptoms described in Dr. Clark's report. (See AR 202-04.) The ALJ's written decision specifically refers to Plaintiff's autism and schizophrenia as a "disability." (Id. ("Dr. Clark did not render an opinion regarding when the disability began.").) Once the ALJ found Plaintiff disabled, SSR 83-20 required the ALJ to determine the onset date if it was ambiguous from the record.

Although the ALJ determined that Plaintiff was disabled, he did not determine the onset date of her disability as required by SSR 83-20. In fact, the ALJ did not cite or apply SSR 83-20 at all. At the hearing, the ALJ indicated his intent to develop the record for his decision, as he left the record open for 60 days to permit him to request an opinion regarding onset from Dr. Clark, and for Plaintiff's counsel to submit additional evidence. (AR 239-40.) Despite his intention, the ALJ issued a decision shortly over two

---

[6] Listing 12.03 refers to schizophrenia, paranoid and other psychotic disorders. (J. Mot. 11.)

months later without the benefit of any new information.  (See AR 26.)  The ALJ simply found that Plaintiff was not disabled prior to age 22 because "for the period prior to [Plaintiff's] 22nd birthday, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment."  (AR 26.)

The Commissioner asserts that "because the ALJ found Plaintiff not disabled at step two, the sequential evaluation ended there" and the ALJ did not make any onset determination at all.  (ECF No. 19 at 10.)

However, the Ninth Circuit has squarely rejected the argument set forth by the Commissioner here, that because Plaintiff did not clearly establish onset of his disability before the age of 22, the ALJ was not required to call a medical expert to address onset. In rejecting a nearly identical claim, the Court reasoned, "[i]f, as the Commissioner[] argues an ALJ does not have to call a medical expert unless the claimant has fulfilled his burden of proving an onset date, SSR 83-20 would have no application.  If the claimant proved a date, there would be no need to call a medical expert, and if the claimant, as in this case, was unable to prove a date, then the ALJ would deny disability benefits because the claimant failed to carry his burden.  We refuse to interpret the claimant's burden as eliminating SSR 83-20's requirement."  Armstrong, 160 F.3d at 590.

Next, the Commissioner argues that the ALJ's determination was reasonable because "there are no medical records showing Plaintiff's condition before the age of 22 . . . and therefore, [there is] no basis on which a medical expert would be able to determine an onset date."  (ECF No. 19 at 12.)  However, in determining the onset date of a disability, SSR 83-20 states that "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity.  The weight to be given any of the relevant evidence depends on the individual case."  Id. at *2.

Applying SSR 83-20 here, Plaintiff alleges disability based on autism beginning on the date of her birth, June 20, 1950.  (AR 31.)  Plaintiff also claims, and the

1  Commissioner does not dispute, that she has no work history.  (AR 203; ECF No. 19 at 4.)

2  The record contains medical evidence confirming that Plaintiff was disabled in 2015

3  from Dr. Clark, an examining psychiatrist, (AR 202-04 (noting that Plaintiff presented

4  "with a decades-long history of autism and schizophrenia")), and two January 16, 2014

5  Psychiatric Review Technique reports by Dr. Loomis, a reviewing psychiatrist, finding

6  that Plaintiff presently met listing 12.03 in connection to her Title XVI claim, (AR 218-28),

7  but there was insufficient evidence to determine whether she had a disabling

8  impairment from June 20, 1968 to June 20, 1972, (AR 207-17).  The Administrative

9  Record indicates that the Administration requested medical records specifically for the

10  period between June 1968 through June 1973, but no records were received.  (AR 205.)

11      Also in the record were documents completed by Plaintiff's Deputy Public

12  Guardian, Tiffany Tsai, including an August 26, 2013 Disability Report – Appeal, (AR 169-

13  176), and a October 31, 2013 Adult Function Report, (AR 177-186).  In these documents,

14  the public guardian provided the Administration with the information and authorization

15  needed to contact Steven F., Plaintiff's brother.  (AR 169.)  She provided the names and

16  contact information for several doctors and evaluators, including a Plaintiff's "primary

17  physician [with] knowledge of her medical history," who had treated her since 2003 (AR

18  172); a doctor who performed IQ testing and a psychological evaluation in 1998

19  pursuant to a referral from the Public Guardian Office, (AR 173); Plaintiff's retired

20  psychiatrist who treated her beginning at an unknown time, (AR 175); and the geriatric

21  care manager who completed Plaintiff's home care assessment in March 2005, (AR 175).

22  Ms. Tsai indicated Plaintiff "displays behavior indicative of autism: Social interaction is

23  very impaired.  Social and cognitive skills are [at] mentally retardation [sic] level.  Unable

24  to manage w/o custodial care [and] supervision.  Display[s] vocal tic."  (AR 177.)  Plaintiff

25  was prescribed Sertraline and Atenolol.  (AR  184.)

26      Ms. Tsai stated that Plaintiff was born with autism, did not go anywhere without

27  her caregiver, and was under conservatorship with the Public Guardian Office.  (AR 178-

28  80.)  Ms. Tsai further stated that there had been "no change" in Plaintiff's social

18cv1972-AJB (MSB)

activities, and she had kept to herself since the beginning of her illness or condition. (AR 182.)

Other documents in the Administrative Record shed further light on Plaintiff's history. Plaintiff's father's trust, dated May 3, 1979, indicated that it was his desire that Plaintiff "be cared for for her lifetime," whereas another beneficiary was to be provided for only "until the age of twenty-two (22); provided, however, that if [the other beneficiary] desires to continue her education after age 22 and attend graduate school, the Trustees shall see that she is cared for and her educational expenses are paid." (AR 104.) The trust estate was not to be distributed to Plaintiff's brother or his appointees until after Plaintiff's death. (AR 105.) There are also provisions in the trust for a home for Plaintiff, so long as the trustees determine that it is in Plaintiff's best interests to reside there. (AR 109.) Copies of court documents in the Administrative Record from 2007 confirm Plaintiff's conservatorship. (AR 118-19.) A court order dated October 1, 2012 indicates the appointment of a Guardian Ad Litem for Plaintiff. (AR 127.)

A Disability Report – Adult was filed on Plaintiff's behalf, however the interviewer had no contact with Plaintiff and it is unclear who provided the information in the January 7, 2013 report. (AR 128-30.) According to the report, Plaintiff's highest grade in school was third, and she attended special education classes from 1956 to 1959 at Adams Elementary School in San Diego, and from 1965 to 1967 through the San Diego Unified School District's Special Education Program. (AR 132.) In addition to the doctors identified above, this report provided information for Plaintiff's doctor at the University of California Los Angeles Psychology Department, who was alleged to have treated Plaintiff from 1950 to 1975 and indicated treatment at the San Diego Psychiatric Hospital from 1970 to 1972. (AR 135-36.) There was a note at the end of the report indicating that Plaintiff's brother, Steven F., had details about her behavior, providing his contact number, and noting that Plaintiff "used to rock, was socially withdrawn, and

/ / /

/ / /

once acted out and was cutting off her hair.  She probably didn't speak until age 4.  She ate baby food until age 5 or 6."[7]  (AR 140.)

Reviewing this record holistically, as SSR 83-20 required, there was medical evidence of Plaintiff's disability and onset date was ambiguous, therefore SSR 83-20 required the ALJ to develop the record.[8]

Here, the alleged onset date of Plaintiff's birth, June 20, 1950, is distant and it appears adequate medical records from the relevant time period were not available. The Commissioner concedes that it would be difficult to obtain medical records from the 1950's and 1960's and such records likely do not exist.  (ECF No. 19 at 12.)  At the hearing, the ALJ also recognized the difficulty obtaining records before 1972.  (AR 235.)

The ALJ's duty to develop the record was particularly important in this case, where the record indicates that Plaintiff was unable to advocate on her own behalf, and public guardians and other representatives interfaced with Administration for her.  The application was prompted when a court in a hearing related to Plaintiff's conservatorship asked why Plaintiff was not receiving benefits, and proceeded to appoint an attorney for that purpose.  (AR 235.)  The record suggests the people acting on Plaintiff's behalf lacked the knowledge necessary to protect her interests.  This was evidenced by Dr. Clark's statement in her report that "the women from the Public Guardian's Office accompanying [Plaintiff to her examination] had to call the office and obtain information. . . .  Much of the information is simply not known."  (AR 202.)  As

---

[7] The Court notes that the incident about Plaintiff acting out and cutting off her hair was not referenced in Steven F.'s letter.  (See AR 189-91.)  This verifies that the source of this information was independent from the letter later submitted to the Appeals Council.

[8] Social Security Ruling 18-01p provides similar guidance with respect to cases, like the present one, where the onset date of a disability must be inferred due to a lack of available evidence.  The Ruling acknowledges that "the date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records[.]"  2018 WL 4945639 at *6.  In such cases, the Ruling states "we will assist with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence."  Id.  These sources and entities include "the services of an ME."  Id.

another example, while Plaintiff used alternate spellings of her first name and her family sometimes used an alternate surname, (see AR 44, 102-115), representatives gave inconsistent reports of the names Plaintiff used. (Compare AR 130 (unknown reporter stating Plaintiff did not use any other names on medical or educational records in Disability Report – Adult) and 170 (deputy public guardian reporting Plaintiff used no other names on medical records) with 162 (social security counsel reporting that Plaintiff used other spellings for her first name and a distinctly different last name on medical records).) That Plaintiff was not able to advocate for herself was also evident at the hearing, the transcript of which is less than seven pages. (AR 234-40.) Plaintiff did not appear and the ALJ determined based on the record that he did not need to see her to understand how impaired she was. (AR 237.) The ALJ and Plaintiff's counsel discussed the challenge of locating evidence, and Plaintiff's counsel seemed to lack knowledge of what, if anything, had been done to acquire relevant records. (AR 235 ("I don't think anyone looked for school records. . . . they've been looking to try . . . to get records.") Neither the ALJ nor Plaintiff's attorney once considered Plaintiff a source of information. (See AR 234-40.)

The Commissioner next claims that even if the ALJ was required to consult a medical advisor, the ALJ complied with his requirement by sending a letter to examining psychiatrist, Dr. Clark. (ECF No. 19 at 13.) The Commissioner states that "the ALJ did solicit an opinion from a medical expert when he sent an interrogatory to consultative examiner Dr. Clark on the issue of onset. The ALJ noted that he did not receive an answer from Dr. Clark, indicating, as the ALJ found, that it was not possible to accurately respond to this hypothetical."[9] (Id. (internal citations to the record omitted).) In fact, the ALJ did send Dr. Clark a letter, asking, "[w]ould you kindly give me your opinion as to

---

[9] The ALJ stated on the record "I will also send and interrog' to a psychiatrist, specifically asking him – not based on the medical evidence only, but with his knowledge of autism, when do people generally start experiencing the symptoms." (AR 239.)

whether it is more likely than not that claimant suffered from these two conditions, or either of them, prior to the age 22. If it is not possible to render an opinion, I would like to know that as well." (AR 27.) After the ALJ received no answer, he concluded that it was "not possible to accurately respond to that that hypothetical interrogatory." (AR 26.)

The duty of the ALJ under SSR 83-20 to "call on the services of a medical advisor" is not satisfied by sending an unanswered letter to a claimant's treating physician. See Moon, 542 F. App'x at 647 (stating twice that the duty is to "obtain" an opinion). Furthermore, nothing about the lack of response from Dr. Clark indicates that it was not possible for her to render an opinion, particularly since the ALJ specifically asked Dr. Clark to inform him if she could not render the requested opinion. The ALJ did not explain any basis for his conclusion. There was some evidence on which Dr. Clark may have rested an opinion. Further, it is unknown whether Dr. Clark could opine, for example, that the onset of Plaintiff's autism occurred before age 22 because autism is defined, in part, by childhood onset as argued by Plaintiff. Indeed, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-V) states that an autism diagnosis requires that "[s]ymptoms must be present in the early developmental period" and "[c]ause clinically significant impairment in social, occupational, or other important areas of current functioning." DSM-V 50 (5th Ed. 2013), see also id. at 53 ("The essential features of autism spectrum disorder are persistent impairment in reciprocal social communications and social interaction (Criterion A), and restricted, repetitive patterns of behavior, interests, or activities (Criterion B). These symptoms are present from early childhood and limit or impair everyday functioning (Criteria C and D).").

Based on the record described above, the ALJ erred by not developing the record regarding the onset date of Plaintiff's disability. Whether further development of the record with a medical opinion was possible, or would have made a difference to the

ALJ's decision, is uncertain, which is exactly why the Administration should have the opportunity to develop the record now.

B.     **Evidence Submitted to the Appeals Council**

At the conclusion of the hearing, the ALJ decided to leave the record open for 60 days in order to consult with a medical advisor about "when . . . people generally start experiencing the symptoms [of autism]."  (AR 239.)  Plaintiff's counsel also stated an intention to get the opinion of Plaintiff's "current doctor" on the "same question." (AR 239.)  By letter dated August 20, 2015, the ALJ requested an opinion from a psychiatrist, but the psychiatrist did not respond or otherwise provide an opinion to the ALJ.  (AR 27 (letter to Dr. Clark), 26 (ALJ noting no response received from Dr. Clark).)  Plaintiff's counsel did not submit any additional evidence to the ALJ within the allotted time.  (ECF No. 19 at 16.)

With her Request for Review to the Appeals Council, Plaintiff included two supporting documents: an October 12, 2015 letter from Plaintiff's brother describing Plaintiff's impairments during childhood, (AR 189-91), and a letter written in 1983 by Plaintiff's former treating physician, describing Plaintiff's impairments at the time and for at least five years prior, (AR 231).  Plaintiff's counsel explained she had previously proffered the letter from Plaintiff's brother to the ALJ for consideration, but the ALJ had indicated "that he would let his decision stand."  (AR 192.)  In denying Plaintiff's request, the Appeals Council stated that it had received the letters from Plaintiff's brother, Steven F., and former treating physician, Dr. Brickman and was "making [the letters] part of the record" and that it had "considered the reasons [Plaintiff disagreed] with the decision and the additional evidence."  (AR 10, 12.)

Noting that the Appeals Council refused to review the ALJ's decision after Plaintiff submitted the additional letters, Plaintiff argues that "the Agency erred by failing to evaluate this evidence."  (ECF No. 19 at 16.)  Plaintiff goes on to assert that "[t]he question[s] here [are] therefore whether the ALJ's conclusion is contrary to the weight of the evidence currently of record . . . and whether the Agency erred by failing to

consider this new evidence." (Id.)  The Commissioner asserts that the Appeals Council's

denial of Plaintiff's request for review cannot be reviewed by this Court, but the

submitted evidence is part of the record to be reviewed when determining whether the

ALJ's decision was supported by substantial evidence.  (Id. at 21-22.)

### 1.    The Letters

The first letter was three pages long, dated October 12, 2015, written by Steven

F.[10] (Plaintiff's elder brother by four years) and certified under the penalty of perjury.

(AR 189-191.)  Steven described his experience growing up with Plaintiff, noting

Plaintiff's unusual behaviors since infancy and their parents' worried conversations

about those behaviors.  (AR 189.)  Plaintiff was fearful of ordinary activities, like leaving

her crib, play pen, room, or home and getting into a car or another building.  (AR 189-

90.)  Steven reported that Plaintiff was "late in many developmental milestones," like

crawling, walking, chewing solid food, talking, and reading.  (AR 190.)  She mostly sat

still as a young child, or sat and rocked back and forth, and the walls of her room and

playpen were padded because she banged her head against them.  (AR 190.)  She ate

baby food until she was at least five or six years old.  (AR 190.)  When Plaintiff finally

learned to talk, "it was verbal behavior rather than communication," "monotone voice,

with no apparent emotion," "within a narrow range of scripts," and Plaintiff was

apparently indifferent to content.  (AR 190.)

Steven explained that he helped teach Plaintiff the alphabet, numbers, reading

and basic math, beginning when Plaintiff was roughly nine years old.  (AR 190.)  Plaintiff

was never able to attend regular school classes, and instead she was "[f]rom time to

time . . . placed in various special education programs for developmentally disabled

children or specifically for autistic children."  (AR 190.)  Because she was not responsive

---

[10] To further what the Court perceives as the purpose of Civil Local Rule 7.1(e)(6)(b), protection of
Plaintiff's privacy, the Court refers to Plaintiff's brother initially by his first name and last initial, and
thereafter by his first name.

to attempts to interact with her, Plaintiff did not remain in any of the programs. (AR 190.) Regarding her medical care, Steven recalled that Plaintiff was evaluated physically and psychologically "several times before age 20" and "repeatedly diagnosed as autistic," which he noted was a diagnosis at that time only for the "profoundly autistic." (AR 190.) He provided the names of three medical providers he recalled—Mercy Hospital, UCLA Neuropsychiatric Institute, and Dr. Brand Brickman. (AR 190.) Finally, Steven reported that while Plaintiff had a an excellent memory and liked routine, she "was never able to take care of her basic needs—to shop for groceries, plan meals, prepare her own food, make reasoned decisions about clothing to buy or wear, to manage a bank account, pay bills, make a household budget, know when she needs to see a doctor, have prescriptions filled and refilled, handle laundering and dry cleaning, and so on." (AR 191.)

The second letter was written on August 25, 1983 by J. Brand Brickman, M.D., a diplomate to the American Board of Psychiatry and Neurology and an Associate Clinical Professor in the Psychiatry Department at the UCSD School of Medicine. (AR 231.) Dr. Brickman wrote the letter on behalf of Plaintiff's caregiver, to explain that her responsibilities providing 24-hour care for Plaintiff prevented her from serving as a juror. (See AR 231.) Dr. Brickman explained that the caregiver had been taking care of the "severely disabled, chronic schizophrenic" Plaintiff for "more than half a decade." (AR 231.) According to Dr. Brickman, Plaintiff's "actions and deportment [were] such that she [could not] be left alone by herself even for short periods of time." (AR 231.)

**2. This Court will not review the Appeals Council's decision.**

District Courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council's decision is a non-final agency action." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012) (citing Taylor v. Comm'r of Soc. Sec., 659 F.3d 1228, 1231 (9th Cir. 2011)). "When the Appeals Council declines review, 'the ALJ's decision becomes the final decision of the Commissioner,' and the district court reviews that decision for

substantial evidence, based on the record as a whole." Id. at 1161-62 (citations omitted).

The Ninth Circuit held in Brewes, that when a claimant submits evidence for the first time to the Appeals Council, and the Council considers the evidence in denying review of the ALJ's decision, the new evidence is considered part of the Administrative Record. Id. at 1162. "The Appeals Council will review a case if . . . the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision," and the claimant shows good cause for not submitting the evidence earlier. 20 C.F.R. 404.970(a)-(b). The simple statement in Brewes that the Appeals Council had "considered the additional evidence [and] found that this information [did] not provide a basis for changing the [ALJ's] decision" was sufficient to place the evidence properly before the district court. 682 F.3d at 1161.

Here, the ALJ issued a written decision in this case on October 8, 2015. (See AR 23-26.) When Plaintiff sought review from the Appeals Council, she submitted for the first time[11] the letters from Steven F. and Dr. Brickman. (AR 192-93, see also AR 189-91, 231.) In a February 16, 2017 Order, the Appeals Council noted that it has received additional evidence, which it made part of the record, including the letters in question. (AR 15.) By accepting the evidence and making it a part of the Administrative Record, the Appeals Council "apparently conclud[ed] that it was material within the meaning of 20 C.F.R. § 404.970(b)."[12] Brewes, 682 F.3d at 1164. In its February 16, 2017 Notice of

_____

[11] In Plaintiff's counsel's cover letter accompanying Plaintiff's request for review, counsel notes that Steven F.'s letter was presented to the ALJ after he had already issued his written decision and prior to Plaintiff's request for review. (AR 192-93.) Nevertheless, it appears that the first time the letters are being reviewed in connection to the administrative review process is at the Appeals Council level.

[12] Under these circumstances, where the evidence is part of the Administrative Record and not "new," the Court need not analyze whether the letters were material. The cases cited by Plaintiff for the

Appeals Council Action, the Appeals Council denied review after finding that Plaintiff's additional evidence provided no basis for changing the ALJ's decision. (AR 7.) The Appeals Council stated that it had "considered the reasons [Plaintiff disagreed] with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council. . . . [and] found this information does not provide a basis for changing the [ALJ's] decision." (AR 7.)

Plaintiff's argument is with the Appeals Council's assessment of the evidence, or "failure to consider the new evidence" the way Plaintiff asserts it should have been considered. (See ECF No 19 at 17-19 (arguing that the Administration was supposed to consider testimony from family members "to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition"); 19-21 (arguing that the Appeals Council failed to provide adequate reasons for rejecting the opinion of Dr. Brickman, a treating physician). But lacking jurisdiction, the Court cannot, and will not, review the Council's reasoning for denying review of the ALJ's decision by analyzing whether the Appeals Council accorded proper weight to the evidence it made part of the record. See, e.g., Woodsum v. Astrue, 711 F. Supp. 2d 1239, 1246 (W.D. Wash. 2010) (with a lengthy

--------------------

proposition that "[r]emand is necessary where the material evidence gives rise to a 'reasonable probability' that the new evidence might change the hearing" are not applicable as they do not address evidence that was, as here, accepted by the Appeals Council. (See ECF No. 19 at 17 (citing Borrelli, 570 F. App'x at 651-52 and Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984)).) In Booz, the Plaintiff had first presented new evidence that had not been considered by either the ALJ or the Appeals Council to the District Court. 734 F.2d at 1380. In Borelli, which is an unpublished Ninth Circuit decision, the Plaintiff had submitted documents to the Appeals Council, which "denied review without opinion." 570 F. App'x at 651. While it was unclear from the appellate decision whether the Appeals Council made the documents part of the record, the district court decision clarifies that the Appeals Council had excluded some of the plaintiff's proffered evidence from the Administrative Record. See Borrelli v. Astrue, No. 1:10-cv-02396-SKO, 2012 WL 947343, at *5 (E.D. Cal. Mar. 20, 2012), vacated sub nom. Borrelli v. Comm'r of Soc. Sec., 570 F. App'x 651 (9th Cir. 2014) ("The records the Appeals Council stated it considered and made part of the record did not include the July 19, 2010, report from Dr. McMillan or the August 16, 2010, report from Dr. Temnyk to which Plaintiff's counsel referred in the September 9, 2010, letter to the Appeals Council.")

discussion and review of cases, concluding "the Appeals Council only is required to 'consider' and 'evaluate' the additional evidence" and "[n]o mention is made of any requirement that the Appeals Council explain its decision").

Instead, because the Appeals Council ordered the letters into Administrative Record and considered them, the Court can consider them as part of the record when determining whether the ALJ's opinion was supported by substantial evidence.

### 3. The ALJ's decision is not supported by substantial evidence.

Finally, the Court returns to the question of whether the ALJ's decision was supported by substantial evidence, considering all of the evidence in the Administrative Record. Plaintiff argues that the new evidence submitted to the Appeals Council "bears directly upon the issue of onset of Plaintiff's disability, which is the dispositive issue in this case," and "in combination shows that Plaintiff's impairments have been disabling since birth, and the ALJ's conclusion that [Plaintiff] did not have medically determinable impairments prior to age 22 is contrary to the weight of the evidence." (ECF No. 19 at 18, 21.) The Commissioner counters that the ALJ's determination that "Plaintiff was not under a disability as defined by the Act prior to age 22, and therefore not entitled to [child's insurance benefits]" was supported by substantial evidence and should be affirmed. (Id. at 8.)

Remand is appropriate because the ALJ based his decision on the absence of evidence of onset from before Plaintiff's 22nd birthday. In denying Plaintiff's claim, the ALJ stated:

> [T]here is no medical evidence indicating when the claimant was first affected by either [autism or schizophrenia] . . . . Without some documentation to support the allegation of disability from a date prior to the claimant's 22nd birthday, her claim must be denied. . . . Accordingly, I find that for the period prior to the claimant's 22nd birthday, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.

(See AR 26.) It stands to reason that ALJs should be given the opportunity to review new evidence related to onset in cases where benefits are initially denied because of the absence of evidence related to onset at the initial hearing. This is particularly true in cases, like the present one, where: (1) the ALJ did not find any evidence in the Administrative Record contrary to Plaintiff's onset date; (2) the ALJ's denial was based heavily, if not entirely, on the absence of evidence of onset; (3) the Plaintiff's age, and the severity of her impairment, makes obtaining evidence regarding onset particularly difficult; (4) the ALJ failed to call on a medical advisor to obtain expert advice regarding onset date; and (5) the disability at issue is one about which a medical advisor could potentially opine as to whether the claimant was "born with" the disability or whether the disability could have developed after age 22; and (6) the disability at issue is one that apparently cannot be diagnosed without a finding of childhood onset.[13]

Additionally, persuasive authority exists for remanding cases where a denial of benefits is based on the absence of evidence but where new evidence is subsequently submitted to the Appeals Council. In Borrelli v. Comm'r of Soc. Sec., the claimant provided new evidence to the Appeals Council that was not provided to the ALJ. 570 F. App'x 651 (9th Cir. 2014). The court found that "the new evidence justifies remand in part because the judge explicitly based his decision on the absence of recent medical records." Id. at 652; see also Baccari v. Colvin, No. EDCV 13-2393 RNB, 2014 WL 6065900, at *3 (C.D. Cal. Nov. 13, 2014) (citing Borrelli for the proposition that remand is appropriate where additional evidence is provided to the Appeals Council that "went directly to ALJ's explicit finding of an absence of recent medical evidence[.]"). While the new evidence is not medical evidence of onset prior to Plaintiff's turning 22, such specific medical evidence is not required, either by SSR 83-20, or its successor ruling,

_____

[13] As noted above, autism is apparently defined, at least in part, by childhood onset. See DSM-V at 50-53 ("Symptoms must be present in the early developmental period . . . . These symptoms are present from early childhood and limit or impair everyday functioning [.]").

SSR 18-01p.  2018 WL 4945639, *2 (Oct. 2, 2018) ("[t]he date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records" and "[w]e may consider evidence from other non-medical sources such as the claimant's family, friends, or former employers, if we cannot obtain additional medical evidence or it does not exist (e.g., the evidence was never created or was destroyed), and we cannot reasonably infer the date that the claimant first met the statutory definition of disability based on the medical evidence in the file").  This, combined with the potential that the ALJ will obtain expert medical advice as to onset, creates a reasonable possibility that benefits would be awarded at a second administrative hearing after remand.  See Booz, 734 F.2d at 1380.  After a full review of the Administrative Record, the ALJ's determination that Plaintiff was not disabled before she turned 22 was not supported by substantial evidence.

## IV.  CONCLUSION AND RECOMMENDATION

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff is entitled, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, Plaintiff requests that the Court reverse the Commissioner's decision denying Plaintiff's claim and remand the case to the Commissioner for further

proceedings.  (ECF No. 19 at 26.)  The Commissioner states that "[s]hould this Court find error . . . the Court should remand so that the entity Congress entrusted with making disability determinations may correct any perceived errors."  (Id. (citation omitted).)

Remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.

For the foregoing reasons, the Court **RECOMMENDS** that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **February 21, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 28, 2020**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 7, 2020

Honorable Michael S. Berg
United States Magistrate Judge

18cv1972-AJB (MSB)